Carol **BEARSHIELD**, Appellant,

v.

**JOHN MORRELL & CO.,** Appellee.

No. 96–852.

Supreme Court of Iowa.

Nov. 26, 1997.

Dennis M. McElwain and Michael L. Smith of Smith & McElwain Law Office, Sioux City, for appellant.

Margaret M. Prahl and Sabra K. Craig of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Appellant Carol Bearshield sued her employer, appellee John Morrell & Co., claiming disability discrimination. In granting John Morrell's motion for summary judgment, the district ruled, as a matter of law, that Bearshield was not disabled within the meaning of the Americans with Disabilities Act and the Iowa Civil Rights Act. *See* 42 U.S.C. §§ 12102(2), 12112(a) (1988); Iowa Code §§ 216.2(5), 216.6(1)(a) (1993). Bearshield appealed. We affirm in part, reverse in part, and remand for further proceedings.

I. *Standard of Review.*

We review a summary judgment ruling for correction of errors of law. *See Gerst v. Marshall,* 549 N.W.2d 810, 811 (Iowa 1996). A summary judgment will be upheld "when the moving party shows no genuine issue of material fact exists and it is entitled to judg-

ment as a matter of law." *C–Thru Container Corp. v. Midland Mfg. Co.*, 533 N.W.2d 542, 544 (Iowa 1995). In reviewing a grant of summary judgment, we view the record in the light most favorable to the party opposing summary judgment. *See Gerst*, 549 N.W.2d at 812.

## II. *Background Facts and Proceedings.*

The record, when viewed in the light most favorable to Bearshield, reveals the following facts. John Morrell operates a meatpacking plant in Sioux City, Iowa. Since 1989, Bearshield has worked on the "final trim ham line" at the plant. She trims fat from small pieces of ham passing by on the assembly line, and then throws the pieces into a container.

Bearshield has suffered from degenerative arthritis in both knees for several years, but until 1994 her condition had not prevented her from performing her job. Between early January 1994, and February 3, 1994, Bearshield fell on or twisted her knees on three occasions: once inside the plant, once in the plant parking lot, and once at home. She reported these incidents to John Morrell, but continued to perform her regular job, sitting on a stool when necessary. (Other employees on the ham line were also allowed to use a stool as needed.)

When Bearshield's knee pain continued, she was referred to the company physician. On April 25, 1994, the company doctor advised Bearshield not to work and referred her to a specialist, Dr. Steven Meyer. Dr. Meyer's diagnosis was degenerative arthritis in both knees, aggravated by Bearshield's recent falls. After prescribing various treatment regimens, Dr. Meyer eventually released Bearshield to return to work on May 23, 1994, subject to the following permanent restrictions: Bearshield could not squat or twist, and could not stand for more than two hours at a time.

Bearshield presented herself to John Morrell for work the next day. She was told there was no work available because of the restrictions imposed by Dr. Meyer. These restrictions violated John Morrell's policy requiring a full release before an employee suffering from a nonwork-related injury would be permitted to return to work. (John Morrell claimed Bearshield's injury was not work-related.) Bearshield disagreed with her employer's decision and asserted she could do her regular job with the aid of a stool, just as she had between February 4 and April 25, 1994. When John Morrell persisted in its refusal to allow her to return to work, Bearshield filed a complaint with the Iowa Civil Rights Commission alleging the company's action violated the Americans with Disabilities Act (hereinafter "ADA") and the Iowa Civil Rights Act (hereinafter "ICRA").

Meanwhile, Bearshield's attorney continued to ask John Morrell to return Bearshield to the production line. In November 1994 John Morrell allowed Bearshield to return to her old job as a trimmer on the ham line. Bearshield was still subject to the restrictions imposed by Dr. Meyer, so she used a stool when needed to perform her duties. She continued on the ham line without incident for six months, when she then bid into another job. John Morrell refused to pay Bearshield for the time she was off work between May 23, 1994, and November 14, 1994.

Bearshield filed this action in March 1995, seeking back pay, compensatory damages, punitive damages, attorney's fees, and injunctive relief.[1] John Morrell filed a motion for summary judgment, claiming Bearshield could not establish (1) that she was disabled

---

1. On June 24, 1994, Bearshield and her local union filed a written grievance claiming John Morrell violated its collective bargaining agreement with the union by refusing to allow Bearshield to return to work. After Bearshield had filed her discrimination action in district court, an arbitrator sustained her grievance and awarded Bearshield back pay for the time period at issue. John Morrell claims "there are no past wrongs which have been left unremedied" because Bearshield has received back pay and has been reinstated to her job. Without reviewing in detail the remedies that remain available to Bearshield, we simply note she is, at a minimum, entitled to pursue her claim for emotional distress damages. *See Dutcher v. Randall Foods*, 546 N.W.2d 889, 894 (Iowa 1996) (holding damages for emotional distress are a component of actual damages recoverable under the ICRA). Therefore, her disability discrimination claim remains viable.

under the ADA and ICRA, or (2) that she was terminated or replaced by John Morrell.[2] The company also claimed that because Bearshield was not disabled, she had no standing to seek an injunction against John Morrell's use of its "100% healed" policy. The district court ruled John Morrell had shown as a matter of law that Bearshield was not disabled and, accordingly, dismissed her petition. Bearshield appeals.

### III. *General Legal Principles.*

Proof of a disability is essential to recovery for disability discrimination under the ADA and the ICRA. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a *disability* . . . .") (emphasis added); Iowa Code § 216.6(1)(a) (making it an unfair or discriminatory practice to "discriminate in employment against any . . . employee because of the . . . *disability* of such . . . employee") (emphasis added); *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 234 (Iowa 1995). The issue of whether an individual has a disability is a factual question to be decided on a case-by-case basis. *See Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir.1992); *Smith v. Kitterman, Inc.*, 897 F.Supp. 423, 427 n. 3 (W.D.Mo.1995).

The ADA defines a "disability" as (1) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual"; (2) having "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2). The term "disability" is defined similarly under the ICRA. Iowa Code section 216.2(5) defines a "disability" as "the physical or mental condition of a person which constitutes a substantial handicap." The regulations promulgated pursuant to chapter 216 expand on this basic definition:

> The term "substantially handicapped person" shall mean any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impair-

ment, or is regarded as having such an impairment.

Iowa Admin. Code r. 161—8.26(1) (1993).

■ In *Boelman v. Manson State Bank*, 522 N.W.2d 73, 79 (Iowa 1994), this court looked to the federal cases interpreting section 504 of the Rehabilitation Act in determining the appropriate analytical framework for state disability discrimination claims. The Rehabilitation Act now looks to the standards established by title I of the ADA and the regulations promulgated pursuant to that statute in determining whether the Rehabilitation Act has been violated. *See* 29 U.S.C. § 793(d) (1992). Given the common purposes of the ADA and the ICRA's prohibition of disability discrimination, as well as the similarity in the terminology of these statutes, we will look to the ADA and underlying federal regulations in developing standards under the ICRA for disability discrimination claims. *See Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir.1997) (applying, in disability discrimination case brought under the ICRA, federal standards developed under the ADA); *Probasco v. Iowa Civil Rights Comm'n*, 420 N.W.2d 432, 435–36 (Iowa 1988) (noting similarity in federal and state statutes and regulations governing disability discrimination, and incorporating federal definitions of relevant terms into Iowa law); *cf. King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601 (Iowa 1983) (applying by analogy the same burdens and order of presentation of proof in chapter 601A, now chapter 216, religious discrimination case as used in title VII cases). Cases interpreting the Rehabilitation Act remain instructive, however, since the ADA defines "disability" substantially the same as the Rehabilitation Act defines that term. *Compare* 29 U.S.C. § 706(8)(B), *with* 42 U.S.C. § 12102(2).

Given the identity of the applicable legal principles and analytical framework with respect to the question of whether one has a disability under the ADA and the ICRA, our subsequent discussion of whether Bearshield is disabled applies equally to her claims under both statutes.

---

**2.** John Morrell does not assert the latter contention on appeal as an alternate basis to support

summary judgment in its favor.

**IV.** *Is There Evidence to Support a Factual Finding That Bearshield Has a Physical Impairment "That Substantially Limits One or More of [Her] Major Life Activities"?*

**A.** *Applicable analysis.* John Morrell does not dispute that the evidence shows Bearshield suffers from a "physical impairment," namely, degenerative arthritis. *See* 29 C.F.R. § 1630.2(h)(1) (1997) (defining "physical impairment" to include conditions that affect the body's musculoskeletal system). The fighting issue is whether Bearshield's arthritis "substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(2); Iowa Admin. Code r. 161—8.26(1). "Major life activities" are defined in federal and state regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *accord* Iowa Admin. Code r. 161—8.26(3). This list is not intended to be exhaustive; "major life activities" may also include sitting and standing. *See* 29 C.F.R. app. § 1630.2(i).

One is "substantially limit[ed]" in performing these activities if one is

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The following factors should be considered in making this assessment: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2). "[C]ourts have generally found that the statutory insistence that a 'major life activity' be 'substantially impaired' excludes ... those impairments that do not actually alter a person's general quality of life or ability to function." *Fallacaro v. Richardson,* 965 F.Supp. 87, 91 (D.D.C.1997).

Bearshield claims her arthritis substantially limits her ability to care for herself, walk, and work. The Equal Employment Opportunity Commission's (EEOC's) interpretive guidance to the ADA suggests that a determination should be made as to whether an individual is substantially limited in a major life activity other than working before determining if an individual is substantially limited in working. *See* 29 C.F.R. app. § 1630.2(j). Therefore, we will first discuss Bearshield's claimed limitations as to major life activities other than working, and then address her alleged limitations on working.

■ **B.** *Limitations on caring for oneself and walking.* We begin by examining the record for evidence of the three factors listed above to assess whether Bearshield's condition substantially limits a major life activity. Dr. Meyer states in his report that Bearshield has "very severe" degenerative arthritis in both knees. He notes she has suffered from degenerative arthritis for several years; he does not state whether her condition will worsen in the future. The impact of Bearshield's arthritic condition is detailed in her affidavit submitted in resistance to John Morrell's motion for summary judgment. She states her specific limitations:

a. I have pain with walking more than a few blocks and after a distance of five or six blocks, the pain becomes more and more severe to the point where I quit walking. This pain continues on a daily basis and accumulates over the course of a day, so that the more active I am the more pain I have as the day progresses.

b. I cannot get down on my knees and crawl without great pain.

c. I cannot kneel and sit my buttocks back on my legs, without excruciating pain.

d. I cannot sit down and straighten my legs out in front of me.

e. I cannot sit in a chair and let my legs hang.

f. I cannot walk up and down steps without pain.

g. When I go shopping, by the time I walk through the store, I experience great

pain, and I have to move at a much slower pace than I did before my injuries and the development of my condition.

h. After I sit for an extended period of time at work or at home, and I get back on my feet, I have pain on [sic] my knees that can be disabling.

Bearshield testified in her deposition that she could do her normal activities at home with one exception. Her laundry appliances are in the basement of her home and, although she can go up and down stairs, she has pain doing so. Consequently, her daughters assist her in doing the family's laundry. In addition to Bearshield's testimony of the impact of her arthritis on her daily activities, Dr. Meyer stated that Bearshield is permanently restricted from twisting and squatting and from standing more than two hours at a time.

From this evidence a reasonable fact finder could conclude that Bearshield suffers from a permanent and severe impairment, and that the impact of this impairment on Bearshield's major life activities is permanent. The closer question is whether a reasonable person could find that Bearshield's impairment "substantially limits" her ability to engage in a major life activity. We think the evidence before us does not generate a factual dispute on this issue.

Bearshield's impairment, although severe, has not altered her general quality of life or ability to function. She can still walk, stand, sit, take care of herself, and perform manual tasks. It is true she has limitations on her ability to do these activities and on the duration of such activities, but we do not think a reasonable person could find these restrictions significant under the record before us. *See Stroman v. Blue Cross & Blue Shield Ass'n,* 966 F.Supp. 9, 12 (D.D.C.1997) (holding allegation that plaintiff has "problems performing minor household chores does not by itself establish a substantial limitation on major life activities"); *Vaughan v. Harvard Indus., Inc.,* 926 F.Supp. 1340, 1347 (W.D.Tenn.1996) (finding thirty-minute standing limitation and lifting restrictions that prevented plaintiff from shopping for long periods of time and from picking up his child, while "undoubtedly inconvenient," were

not significant limitations on a major life activity); *Blanton v. Winston Printing Co.,* 868 F.Supp. 804, 807 (M.D.N.C.1994) (finding knee injury not substantially limiting where limits were an inability to run briskly and climb stairs easily). Although Bearshield is totally precluded from squatting and twisting, we do not view these movements as *major* life activities.

C. *Limitations on working.* Bearshield also claims her arthritis substantially limits her ability to work. A person is substantially limited in his or her ability to work when the person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

In addition to the three factors listed above concerning the nature, severity and duration of the impairment and its impact, the following additional factors may be considered in determining whether an individual is substantially limited in working:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii); *accord Probasco,* 420 N.W.2d at 436. These factors reflect the ADA's fundamental goal of "preventing substantial personal hardship in the form of significant reduction in a person's real work

opportunities." *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 488 (8th Cir.1996); *accord Probasco,* 420 N.W.2d at 436 (holding the impairment must "significantly decrease [the] *individual's* ability to obtain satisfactory employment") (emphasis added). We turn now to an examination of the evidence on the effect of Bearshield's impairment on her ability to work.

Bearshield stated in her answers to interrogatories that she has lived in the Sioux City area her entire life. She is married and has nine children, some of whom are still in school. Bearshield has a GED. For the last thirty years, she has been employed as a production line worker in the Sioux City area, with the exception of a few years in the 1960s when she worked as a shirt presser at a clothes cleaners.

Bearshield stated in her affidavit that all the jobs she has ever performed require "constant standing or walking about on [her] feet." For this reason, she stated, she could no longer perform such work "without the accommodation of the use of a chair or stool for sitting" or "the accommodation of being able to sit for extended periods of time through the day." Bearshield also testified her supervisor told her when she attempted to return to work in May 1994 that "with the restrictions [she] had, there was nothing that [she] could do on the line."

On the other hand, Bearshield testified in her deposition she thought she was physically capable of working as a cashier or a housekeeper. She said between May and November of 1994 she applied at several businesses for such a position, indicating in her applications the restrictions placed upon her by Dr. Meyer. She was not called for an interview by any of these establishments.

Bearshield also offered evidence from her employer to substantiate her claim that she could not do production line work. Charles Newton, director of human resources for John Morrell, testified at her unemployment compensation hearing. (This testimony was given before John Morrell allowed Bearshield to return to work.) Newton stated Bearshield's supervisor informed him that Bearshield would not be able to do her job on the line, even with the use of a stool.

We conclude Bearshield has demonstrated the existence of a material issue of disputed fact on the question of whether her arthritis substantially limits her ability to work. The record is uncontradicted that Bearshield has limited education, job training, and experience. A reasonable person could also find Bearshield is for all practical purposes unable to relocate to find work. Most importantly, a reasonable fact finder could find Bearshield is precluded from doing production line work unless her employer is willing to provide an accommodation to meet her restriction on prolonged standing.

■ John Morrell argues Bearshield's current performance of her job on the line fatally contradicts her claim that she is substantially limited in her ability to work. But John Morrell overlooks the fact Bearshield is able to do her job only because she has the accommodation of a stool. The determination of an individual's ability to work in a class of jobs or a broad range of jobs must be made without regard to the possibility of accommodation. *See Gaines v. Runyon,* 107 F.3d 1171, 1178 (6th Cir.1997) ("The plaintiff must first demonstrate that *without the requested accommodation,* he is unable to perform the essential functions of his job.") (emphasis added); *Williams v. Avnet, Inc.,* 910 F.Supp. 1124, 1131 (E.D.N.C.1995) (stating plaintiff must show an inability to obtain work "*without a stated reasonable accommodation*") (emphasis added), *aff'd sub nom. Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346 (4th Cir.1996); *cf. Fallacaro,* 965 F.Supp. at 93 (finding plaintiff had a disability even though it was "easy to accommodate [her] disability").

■ The more debatable issue here is whether production line work is a "class of jobs or a broad range of jobs in various classes" as required to prove a substantial limitation on one's ability to work. 29 C.F.R. § 1630.2(j)(3)(i). The EEOC's interpretative guidance gives this example:

[A]n individual who has a back condition that prevents the individual from performing *any heavy labor job* would be substantially limited in the major life activity of working because the individual's impair-

ment eliminates his or her ability to perform a class of jobs.

*Id.* app. § 1630.2(j) (emphasis added). In contrast, courts have found an inability to perform a narrower category of jobs is not a substantial limitation on one's ability to work. *See, e.g., McKay v. Toyota Motor Mfg., U.S.A.,* 110 F.3d 369, 373 (6th Cir.1997) (finding inadequate the inability to do "assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds"); *Helfter,* 115 F.3d at 617 (finding the inability to do jobs requiring "sustained, highly-repetitive activities with either hand, or lift more than ten pounds frequently and twenty pounds occasionally" was an insufficient showing of an inability to perform a class of jobs or a broad range of jobs in various classes).

We think Bearshield's evidence that she cannot do *any* production line work to which she has reasonable access could support a finding she is disqualified from performing a class of jobs, namely, any job on a production line. *See Kitterman,* 897 F.Supp. at 427–28 (finding summary judgment inappropriate on issue of plaintiff's disability where she was precluded from doing assembly line work and had limited educational, training, and employment background). If Bearshield is unable to perform production line work, a fact finder could conclude Bearshield's disability results in a "significant reduction in [her] real work opportunities." *Webb,* 94 F.3d at 488. John Morrell argues, in response, that Bearshield can work as a cashier or a housekeeper. The fact Bearshield can perform work as a cashier or housekeeper does not, however, automatically foreclose a finding that she is unable to perform a class of jobs without accommodation. *See Henkel Corp. v. Iowa Civil Rights Comm'n,* 471 N.W.2d 806, 810 (Iowa 1991) (holding an individual need not be completely incapable of working to fall under the protection of the ADA).

■ In summary, we think Bearshield has produced sufficient evidence to generate a fact question on the material issue of whether she has "a physical or mental impairment that substantially limits" the major life activity of work. Therefore, the district court erred in granting summary judgment to John Morrell on the basis that Bearshield did not have a disability under the first alternative of the statutory definition of that term.

### V. *Is There Evidence To Support A Finding That John Morrell Regarded Bearshield As Being Disabled?*

A. *Applicable law.* Bearshield also claims she has a disability because her employer regarded her as having an impairment that substantially limits her ability to work. As noted above, the third prong of the definition of "disability" is "being regarded as having [a substantially limiting] impairment." 42 U.S.C. § 12102(2)(c). The EEOC has identified three ways in which to satisfy this part of the definition of "disability." *See* 29 C.F.R. app. § 1630.2(1). The first way is pertinent here: "The individual may have an impairment which is not substantially limiting but is perceived by the employer ... as constituting a substantially limiting impairment." *Id.*

In *School Board v. Arline,* 480 U.S. 273, 283, 107 S.Ct. 1123, 1128–29, 94 L.Ed.2d 307, 318 (1987), the United States Supreme Court discussed Congress's motivation for including persons who do not have a disability within the umbrella of the ADA: "[A visible physical] impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment." The Court stated the basic purpose of this part of the definition "is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others." *Id.* at 284, 107 S.Ct. at 1129, 94 L.Ed.2d at 318.

This philosophy is echoed in the EEOC's interpretive guidance:

An individual rejected from a job because of the "myths, fears and stereotypes" associated with disabilities would be covered under this part of the definition of disability, whether or not the employer's ... perception were shared by others in the field and whether or not the individual's actual physical or mental condition would be considered a disability under the

first or second part of this definition.· As the legislative history notes, sociologists have identified common attitudinal barriers that frequently result in employers excluding individuals with disabilities. These include concerns regarding productivity, *safety,* insurance, *liability,* attendance, cost of accommodation and accessibility, *workers' compensation costs,* and acceptance by coworkers and customers.

Therefore, if an individual can show that an employer ... made an employment decision because of a perception of disability based on "myth, fear or stereotype," the individual will satisfy the "regarded as" part of the definition of disability.

29 C.F.R. app. § 1630.2(1) (emphasis added). An employer's reliance on myths, fears, and stereotypes is directly contrary to the ADA and ICRA's requirement that persons be individually assessed as to their ability to perform the job in question. *See Sarsycki v. United Parcel Serv.,* 862 F.Supp. 336, 341 (W.D.Okla.1994) ("An individualized assessment is absolutely necessary if persons with disabilities are to be protected from unfair and inaccurate stereotypes and prejudices."); *Frank v. American Freight Sys., Inc.,* 398 N.W.2d 797, 801 (Iowa 1987) ("We believe that, in most discrimination cases based on disability, individualized consideration must be given to the job and to the applicant's particular circumstances...."). We turn now to the evidence presented to the district court on this issue.

■ B. *Discussion.* As we noted above, John Morrell's director of human resources, Charles Newton, testified that the company believed Bearshield could not do *her* job even with accommodation. Clearly, evidence that the employer views the employee as unable to perform a particular job is insufficient to prove the employer regarded the employee as having a substantial limitation on the employee's ability to work. *See, e.g., Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993); *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986).

■ Our analysis does not end here, however, because Bearshield has also offered proof that John Morrell had a "100% healed" policy. Newton testified that employees injured off the job are not allowed to return to work until they have a full release. He said the company would not allow Bearshield to return to her job until she was released without restrictions because it did not "want to take the chance of further injuring her and having it become a worker comp problem." In addition, Bearshield testified that when she reported to work after her release by Dr. Meyer, her foreman stated he could not use her because of her restrictions. The company's nurse also told Bearshield she "couldn't work with [her] restrictions." Bearshield testified that her job was the easiest one at the plant.

We think Bearshield has shown a factual issue as to whether John Morrell perceived Bearshield as having a disability.[3] The evidence could support a finding that John Morrell's refusal to allow Bearshield to return to work was based on its fear of higher costs, as reflected by the company's "100% healed" policy, rather than on an individualized assessment, as required by the ADA and the ICRA.[4] *Compare Kitterman,* 897 F.Supp. at

---

**3.** Bearshield argues John Morrell's "100% healed" policy is a per se violation of the ADA and the ICRA. *See Hutchinson v. United Parcel Serv., Inc.,* 883 F.Supp. 379, 396 (N.D.Iowa 1995) (stating in dicta that a "100% healed" requirement is a per se violation of the ADA). Our review of the district court's grant of summary judgment requires only that we determine whether John Morrell has shown it is entitled to judgment as a matter of law. Bearshield did not file a cross-motion for summary judgment and does not claim that she is entitled to judgment as a matter of law. Therefore, we do not decide whether a "100% healed" policy is a per se violation of the ADA and the ICRA.

**4.** John Morrell contends Bearshield did obtain an individualized assessment of her ability to perform her job-in November 1994-and that as a result she was returned to the line. But in determining whether an employer perceives an employee as disabled, the focus must be on the employer's attitude at the time of the adverse employment decision. *Cf. Cheatwood v. Roanoke Indus.,* 891 F.Supp. 1528, 1537 (N.D.Ala.1995) (holding critical inquiry was whether plaintiff could perform the essential functions of his previous job at the time of his termination, rather than at some later date). The record evidence before us could support a finding that no individualized assessment was made in May 1994, when Bearshield was not allowed to return to work.

428–29 (finding sufficient evidence to generate a factual issue on whether employer regarded plaintiff as having a disability where employer refused to let plaintiff return to work unless she had a 100% release from her doctor), *with Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995) (finding, as a matter of law, that employer did not regard employee as disabled where evidence indicated employer's "perception was not based upon speculation, stereotype or myth," but upon a determination that there were no jobs available that could accommodate the employee's restrictions). Such a finding by the trier of fact would support the conclusion John Morrell regards any employee with a work restriction, including Bearshield, as being substantially limited in the activity of work. Therefore, the district court erred in granting John Morrell summary judgment on the basis that, as a matter of law, Bearshield did not have a disability under the third prong of the definition of that term.

## VI. *Disposition.*

We reverse and remand this case for entry of partial summary judgment in favor of John Morrell on Bearshield's disability discrimination claim insofar as it is based on the allegation that she has a disability because her impairment substantially limits major life activities other than working. Bearshield's claim may proceed to trial on her allegations that (1) she has a disability because her impairment substantially limits her ability to work without reasonable accommodation, and (2) John Morrell regards Bearshield as having a disability.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**