# IN THE COURT OF APPEALS OF IOWA

No. 15-2012
Filed December 21, 2016

**DOROTHY HOLLINGER,**
    Plaintiff-Appellant,

**vs.**

**STATE OF IOWA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

Dorothy Hollinger appeals after the district court directed a verdict in favor of the State of Iowa on her claim of disability discrimination. **REVERSED AND REMANDED.**

Mark D. Sherinian and Melissa C. Hasso of Sherinian & Hasso Law Firm, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Barbara E.B. Galloway and Molly M. Weber, Assistant Attorneys General, for appellee State.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Dorothy Hollinger appeals after the district court directed a verdict in favor of the State of Iowa on her claim of disability discrimination. She argues the district court erred in applying the law to the facts of her case when it determined she does not have a disability under the Iowa Civil Rights Act.

**I. Background Facts and Proceedings.**

Hollinger worked as a residential treatment worker at the Glenwood Resource Center, a residential treatment center operated by the State of Iowa for people with physical disabilities. In 2011, a resident kicked Hollinger in the right knee, causing an injury that required surgery, and Hollinger was unable to work for six months. She returned to work with restrictions of no squatting, kneeling, or crawling. She was also restricted to an eight-hour workday. Six months after her restrictions were put in place, Hollinger's doctor notified Glenwood that the restrictions were permanent.

It was Glenwood's practice to only accommodate employees with temporary restrictions because it believed employees with permanent restrictions were unable to perform the essential functions of their jobs. Glenwood did not allow employees with permanent restrictions to work, instead instructing those employees to apply for long-term disability benefits. Once the employees were approved for long-term disability benefits, Glenwood terminated their employment. In accordance with this practice, Glenwood terminated Hollinger's employment after she was approved for long-term disability benefits. Hollinger was then placed on a list of State employees available to be recalled to work.

In 2013, Pamela Stipe, a human resource supervisor at Glenwood, learned that Hollinger was available for recall as an activities aide. After checking the restrictions listed in Hollinger's personnel file, Stipe offered her the position, contingent on her ability to perform the essential functions of the job and a background check. Stipe provided Hollinger with a form for her doctor to complete, which listed the essential functions of the position and asked whether Hollinger was able to perform them, would be able to perform them with accommodation, or was unable to perform them. In completing the form, her doctor stated that Hollinger was able to complete each essential job function either with or without accommodation. The form did not list kneeling, squatting, or crawling as essential job functions, and Hollinger's doctor did not identify any job functions that she would be unable to complete.[1]

Stipe disagreed with the doctor's assessment that Hollinger could perform the essential functions of the activities aide position. Stipe consulted with Glenwood Superintendent Zvia McCormick, who agreed with Stipe's assessment that Hollinger was unable to complete the essential functions of the job because McCormick considered squatting to be an essential function of the activities aide position. Stipe sent Hollinger a letter stating:

> Your name was referred on the recall list for Activities Aide. We have received the essential functions from your physician. Based on the information received from your physician, you are not able to perform the essential functions of this position.
> Your name will be placed back on the recall list.

---

[1] The doctor did write on the form "according to her orthopedist, she cannot squat or kneel" and "cannot get on hands and knees."

In May 2014, Hollinger was recalled to the position of sewing room attendant at Glenwood.

After filing a complaint with the Iowa Civil Rights Commission and receiving a right-to-sue letter, Hollinger filed suit against the State, alleging it discriminated against her in employment based on her disability or perceived disability. In her discovery responses, Hollinger stated she was impaired in her ability to perform the following major life activities: "kneeling, squatting, crawling, and running." She also stated that she was impaired in the major life activity of "musculoskeletal functioning" and, in the past, she had been substantially limited in the major life activities of working and walking.

The matter came before a jury in November 2015. At the close of Hollinger's case in chief, and again at the close of evidence, the State moved for a directed verdict. The trial court granted the second motion, holding "[b]ecause squatting and kneeling are not major life activities, [Hollinger] cannot prove she has a disability under the Iowa Civil Rights Act." Hollinger appeals.

**II. Scope of Review.**

We review a grant of a motion for directed verdict for correction of errors at law. *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 609 (Iowa Ct. App. 2011). In deciding a motion for directed verdict, the question is whether substantial evidence supports each element of the plaintiff's claim. *See id.* If it does not, the court may sustain a motion for directed verdict. *See id.* However, if substantial evidence supports each element of the claim, the motion must be overruled. *See id.* Evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion. *See id.* at 609-10.

We view the evidence supporting a directed verdict in the light most favorable to the party against whom it was directed—in this case, Hollinger. *See id.* at 610. "If reasonable minds could reach different conclusions based on the evidence presented, the issue must be submitted to the jury for determination." *Id.* (citation omitted).

**III. Analysis.**

The Iowa Civil Rights Act (ICRA) prohibits discrimination in employment based on disability. *See* Iowa Code § 216.6(1)(a) (2013). The act defines "disability" as "the physical or mental condition of a person which constitutes a substantial disability." *Id.* § 216.2(5). The Iowa Civil Rights Commission (ICRC), which is tasked with making the necessary rules to enforce the ICRA, *see id.* § 216.5(10), applies the prohibition against discrimination based on disability to "any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment." Iowa Admin. Code r. 161-8.26(1); *see also Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 n.1 (Iowa 2014) (interpreting rule 161-8.26 to "provide the relevant definition of those persons covered by the ICRA").

There is no dispute that Hollinger qualifies as a person who has a physical impairment. The fighting issue is whether that impairment substantially limits one or more major life activities. Rule 161-8.26(3) defines the term "major life activities" to mean "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." The list of activities provided in this definition is not all-inclusive, however; "major life

activities" may also include activities such as sitting and standing. *See Bearshield v. John Morrell & Co.*, 570 N.W.2d 915, 919 (Iowa 1997). Because the ICRA and the Americans with Disabilities Act (ADA) have common purposes of prohibiting disability discrimination and share similar terminology, the Iowa Supreme Court has "look[ed] to the ADA and underlying federal regulations in developing standards under the ICRA for disability discrimination claims." *See id.* at 918.

In granting judgment in favor of the State, the district court relied primarily on *Bearshield*, in which our supreme court was asked to determine if a sufficient fact question existed as to whether Bearshield qualified for the disability discrimination protections of the ADA and the ICRA. *See id.* Bearshield had alleged her arthritis substantially limited "her ability to care for herself, walk, and work," noting she was limited in her ability to walk, kneel, crawl, sit with her legs extended in front of her, sit in a chair with her legs hanging, walk up and down steps, and sit for extended periods of time. *See id.* at 919-20. However, Bearshield conceded that—with the exception of doing her laundry, which required her to use stairs to reach the laundry appliances located in her basement—she could perform normal activities at home. *See id.* at 920.

In analyzing her claim, the supreme court noted the Equal Employment Opportunity Commission (EEOC), in its interpretative guidance to the ADA, suggested the determination of whether an individual is substantially limited in a major life activity *other than* working should be made before determining if an individual is substantially limited from working. *See id.* at 919. Adhering to this suggestion, the court first analyzed whether Bearshield's arthritis substantially

limited her ability to take care of herself and walk, as she alleged. *See id.* at 919-20. The court determined that, although a reasonable fact finder could conclude Bearshield suffered from a permanent and severe impairment, her impairment did not substantially limit her ability to engage in the major life activities of caring for herself or walking because it had not altered the general quality of her life or her ability to function:

> She can still walk, stand, sit, take care of herself, and perform manual tasks. It is true she has limitations on her ability to do these activities and on the duration of such activities, but we do not think a reasonable person could find these restrictions significant under the record before us.

*Id.* at 920. The court then analyzed whether Bearshield's arthritis substantially limited her from engaging in the major life activity of working, ultimately concluding a fact question existed as to whether it did. *See id.* at 921. Accordingly, it reversed the district court's order granting summary judgment in favor of Bearshield's employer. *See id.* at 922.

In directing a verdict in favor of the State, the district court here noted one sentence in *Bearshield* that appears at the end of the section analyzing the limitations Bearshield's condition placed on her ability to engage in major life activities other than working: "Although Bearshield is totally precluded from squatting and twisting, we do not view these movements as *major* life activities." *Id.* at 920. Based on this statement, the district court reasoned Hollinger's impairment did not qualify as a disability under the ICRA:

> The physical disability in *Bearshield* was degenerative arthritis of the knees and is quite similar to the facts of this case. This court is bound to follow the holding of *Bearshield* that squatting is not a major life activity under the [ICRA]. The same logic leads the court

to conclude that kneeling is not a major life activity under the [ICRA].  Thus, [Hollinger] cannot prove she has a disability.

Hollinger argues that we should construe ICRA's protections in the same manner as the regulations promulgating the ADA, which Congress amended in 2008 to protect a broader range of people.  *See Goodpaster*, 849 N.W.2d at 8-9 (discussing the expansion of coverage under the Americans with Disabilities Act Amendments Act of 2008).  The district court rejected this argument, citing *Goodpaster*, in which our supreme court held the 2008 amendments to the ADA did not control its interpretation of the ICRA, noting that, although Iowa employers must follow federal law, "it is axiomatic that an amendment to a federal statute does not simultaneously and automatically amend a parallel or even identical Iowa statute."  *Id.* at 9.

The result reached in *Goodpaster* and the path our supreme court took in reaching it warrant additional discussion.  In *Goodpaster*, our supreme court considered a ruling granting summary judgment in favor of an employer on a disability-discrimination claim brought by an employee with multiple sclerosis. *See id.* at 5-6.  Although it disagreed, "at least with [Goodpaster's] initial phrasing of the point," that the rules promulgating the 2008 amendments to the ADA apply to the ICRA, the court ultimately determined a question of fact existed as to whether an employee with multiple sclerosis has a disability under the ICRA.  *Id.* In arguing multiple sclerosis was not a disability, the employer in *Goodpaster* relied primarily on *Nyrop v. Independent School District No. 11*, 616 F.3d 728, 733-35 (8th Cir. 2010), in which the Eighth Circuit Court of Appeals determined multiple sclerosis is not a disability under the ADA because it does not

substantially limit a major life activity under the ADA. *See id.* at 7 (discussing *Nyrop*). The *Goodpaster* court declined to apply the *Nyrop* holding, noting that *Nyrop* was the product of a pair of United States Supreme Court's decisions "that increased the threshold inquiry in order to decide if an impairment substantially limits a major life activity" under the ADA. *Id.* at 8. In response to those decisions, Congress amended the ADA to provide a broader definition of disability, and the federal regulations and agency rules implementing the amendments categorized multiple sclerosis as a disability. *See id.* at 9-10.

In reaching this conclusion, the *Goodpaster* court noted the ICRA's "general proscription against discrimination" and our history of relying on that provision "to adopt broad definitions to eliminate employment discrimination." *Id.* at 9. Where the ICRA states it "*shall be construed broadly to effectuate its purposes*," the court noted the United States Supreme Court decisions on which the *Nyrop* holding relied had construed the terms of the ADA narrowly. *Id.* at 10. The court also differentiated the ICRA, which is one unified statute, from federal protections against employment discrimination, which "are scattered into three statutes." *Id.* Based on these important differences, the *Goodpaster* court held the pre-2008-ADA-amendment Supreme Court cases relied on in *Nyrop* "are inapposite to any discussion of the meaning of the ICRA" and "do not aid in the interpretation of our Iowa statute today." *Id.*

Ultimately, the *Goodpaster* court concluded multiple sclerosis can be a disability under the ICRA. *See id.* at 13. It noted that cases interpreting the Federal Rehabilitation Act, which the ICRC relied heavily on to define disability under the ICRA, held multiple sclerosis to be a disability. *See id.* at 12.

Moreover, prior to the Supreme Court's narrow interpretation of the ADA, federal courts either considered multiple sclerosis to be a disability under the ADA "or contemplated it could constitute a disability based on testimony of how it impacts an individual's life and work." *Id.* For these reasons, our supreme court concluded that "multiple sclerosis can constitute a disability under the [ICRA] if the plaintiff produces evidence that the condition substantially impaired one or more major life activities during episodes or flare-ups, even if it did not impair life activities at all when in remission." *Id.* at 13. Because Goodpaster had generated a genuine issue of material fact regarding whether his multiple sclerosis substantially limited his major life activities, the supreme court reversed the grant of summary judgment in favor of the employer. *Id.*

The district court determined that Hollinger does not meet the legal definition of having a disability under *Bearshield*'s holding that squatting is not a major life activity. 570 N.W.2d at 920. Because the *Bearshield* decision did not rely on the Supreme Court cases repudiated in *Goodpaster*, the district court concluded *Bearshield* was still good law and its precedent binding. Accordingly, the court directed a verdict in favor of the State on Hollinger's disability-discrimination claim under the ICRA.

Although the district court provided a rational basis for applying the *Bearshield* holding, the result contravenes the public policy of the state. The court in *Goodpaster* declined to automatically apply the ADA amendments in interpreting the ICRA, but doing so was unnecessary because the ICRA already afforded the protection when federal law did not. 849 N.W.2d at 9-13. In contrast, applying the *Bearshield* holding to exclude Hollinger from the definition

of a person with a disability[2] results in the ICRA providing less protection to Iowa workers than is provided under federal law. This result goes against the legislature's express statement that the ICRA "shall be construed broadly to effectuate its purposes" of eliminating unfair and discriminatory practices in employment. Iowa Code § 216.18(1); *see also Iron Workers Local No. 67 v. Hart*, 191 N.W.2d 758, 770 (Iowa 1971). We are to interpret the ICRC's administrative rules implementing chapter 216 in the same manner. *See Foods, Inc. v. ICRC*, 318 N.W.2d 162, 167 (Iowa 1982) (rejecting construction of a commission rule that "would effectively defeat the remedial purpose of" the ICRA). Because an interpretation of the ICRA that excludes those impaired from performing acts such as squatting, kneeling, or crawling does not broadly effectuate the purposes of the ICRA, we decline to apply the statement in *Bearshield* relied on by the district court to the case at bar.

Accordingly, we reverse the directed verdict and remand to the district court for a new trial.

**REVERSED AND REMANDED.**

---

[2] Hollinger argues that *Goodpaster* overruled *Bearshield* because *Bearshield* relied on the pre-amendment federal law that *Goodpaster* held was inapplicable to the ICRA. *See Goodpaster*, 849 N.W.2d at 10. However, because the portion of the *Bearshield* holding relied on by the district court appears as a single sentence without explanation or analysis, *see Bearshield*, 849 N.W.2d at 920, we are unable to discern on which cases the *Bearshield* court may have been relying on or what rationale it used to arrive at its conclusion that squatting and twisting are not major life activities.