In the Matter of the ESTATE OF Albert LILIENTHAL, Deceased.

Lawrence LILIENTHAL, Alice Sievers, Stella Ploen, Sandra Emeis, Barvara Wuestenberg, Sara Orvick, Marian Lilienthal, Marily De Wulf, Charles Lilienthal, Leila Otto Ovesen, Keith R. Lilienthal, Patricia Lilienthal Polzin, Cal Lilienthal, Eloise Otto Siesel, Doris Hamann and Donald Lilienthal, Plaintiffs–Appellees,

v.

Earl LILIENTHAL, Elaine Lilienthal Sorgenfrey, Loren Lilienthal, Leon Lilienthal, Lynn Lilienthal, Charles Freese, James Freese, Keith Burmeister, Karen Burmeister Marine, Judy Burmeister, Lori Burmeister, William Lilienthal, Richard Meade, Temporary Administrator, Defendants, Shirley Lilienthal, Defendant–Appellant.

Shirley LILIENTHAL, Cross–Claimant–Appellant,

v.

J. David McFERREN, Cross–Defendant–Appellee.

No. 96–403.

Court of Appeals of Iowa.

Oct. 29, 1997.

George B. Norman, Rock Island, for appellant.

Peter C. Riley and James E. Bennett of Tom Riley Law Firm, P.C., Cedar Rapids, for appellees.

Ralph D. Sauer of Betty, Neuman & McMahon, Davenport, for cross–defendant J. David McFerren.

Gregory J. Epping of Terpstra, Terpstra & Epping, Cedar Rapids, for Donald Lilienthal.

William B. Norton and Tricia Spratt Fairfield, Lowden, as amicus curiae for Richard C. Meade, administrator.

VOGEL, Judge.

Albert and Elsie Lilienthal were married for fifty-nine years until Elsie's death in Sep-

tember 1986. Albert then married Shirley in December 1986. Albert died in 1995. A dispute involving the distribution of Albert's assets followed.

Following a jury trial and special verdicts, the district court ordered Shirley Lilienthal to deed her interest in several properties to the estate of Albert. These properties had been either deeded by Albert to Shirley during their marriage, or she claimed an interest in them from his estate. Shirley appeals.

To understand Shirley's appeal, we must look back to 1973 when Albert and his first wife, Elsie, made and executed a joint and mutual will. The terms of that will devised essentially all the property owned by each to the survivor, and on the death of the survivor the property passed one-half to Albert's side of the family and one-half to Elsie's side:

(a) An undivided one-half (½) interest unto the brother and sisters of the said Albert Lilienthal,

(b) The remaining one-half (½) interest unto Florence Emeis, sister of the said Elsie Lilienthal, but in the event the said Florence Emeis shall not be living, then said share shall be divided equally between the children of Florence Emeis, who are William Emeis and Sandra Emeis, share and share alike, or to the survivor of them.

In other words, the parties contracted if Albert were to predecease Elsie, Elsie would inherit from him, and on her death, each side of the family would receive an equal distribution from her estate. Likewise, as was the case here, if Elsie should predecease Albert, Albert would inherit from her, and on his death, each side of the family would receive an equal distribution from his estate.

From 1981 to her death in 1986, Elsie lay in a vegetative state in a nursing home. Meanwhile, in 1982, Albert attempted to revoke the mutual will and execute a new will. In 1988, Albert made another will, leaving everything to Shirley. In addition, Albert deeded several properties to himself and Shirley.

Several actions in probate were consolidated and tried to the district court involving Shirley versus the heirs of Albert and Elsie Lilienthal, collectively referred to as "the heirs." We note at the inception of this appeal that, while the parties put forth several issues, we are principally concerned with whether the 1973 will was revoked, thereby voiding its plan of distribution of assets.

We review this probate proceeding for errors at law. Iowa Code § 633.33 (1997); Iowa R.App.P. 4.

**■ I. Will revocation.** Shirley argues that Albert had revoked the 1973 will. After Albert died, the bulk of his estate passed to Shirley by previous inter vivos transfer or pursuant to the terms of his 1988 will. Both Albert's and Elsie's heirs petitioned the court to reopen Elsie's estate. The court denied the request in its ruling of February 28, 1994 stating:

Albert attempted to show in Elsie's estate that he had revoked the mutual will. Revocation of a mutual will can only be done upon adequate notice to the other party to the joint and mutual will, during that party's lifetime. No prior Iowa case has come to the Court's attention which questioned whether the other joint testator must have had notice while the testator was competent. The theory behind joint and mutual wills indicates that the only answer to this question is that the person receiving notice of the revocation of a joint will must be competent at the time of receiving the notice to understand the import and thus be able to make a new will themselves. In this case, if the petitioner can show that Elsie was incompetent to make a will at the time of the purported notice of Albert's revocation of the joint will, then the revocation would have no effect, and petitioners would have a course of action against Albert for their contractual rights under the mutual will.

**■** We have already noted that Elsie was in a nursing home in a vegetative state at the time the purported revocation occurred. This was stipulated to at trial. Therefore, Elsie was not competent to make a new will for herself. *See* Sheldon F. Kurtz, *Kurtz on Iowa Estates* § 4.52 (3d ed., vol. I 1995) (discussing *Duhme v. Duhme,* 260 N.W.2d 415 (Iowa 1977) and stating "notice by one testator to the other who is mentally

incompetent or in a persistent vegetative state, should be insufficient to revoke the contract...."); *accord Gillette v. Cable,* 248 Iowa 7, 79 N.W.2d 195 (1956) (holding a person must be competent both to make a will and to revoke a will in existence). The revocation must fail. Furthermore, under principles of contract law, the 1973 joint and mutual will could not be unilaterally revoked. "[S]ince a contract is made by the joint assent of two or more parties, it can be rescinded by agreement *only by the joint assent of both, or all, such parties.*" 17A Am.Jur.2d *Contracts* § 551 (1991) (emphasis added). The very terms of the will referred to its contractual nature:

> ... and which we do hereby mutually agree, each in consideration of the promise and act of the other, to dispose of such property in the manner hereinafter set forth....

We therefore agree with the jury finding that Albert did not, under either Elsie's incompetency or principles of contract law, revoke the 1973 joint and mutual will by announcing to his wife, who lay in a persistent vegetative state, his intention to do so.

■ Shirley contends the jury could not make this finding as the issue of the revocation had been previously determined in 1988 in an order approving final report in Elsie's estate.

The 1973 mutual will was admitted into probate and administered in Elsie's estate. Her assets passed to Albert according to the terms of that will. An order on an addendum to the executor's final report in Elsie's estate dated June 24, 1988 contained this language:

> It is further ordered by this Court that Albert Lilienthal is entitled to receive the property described in the First and Final Report of Elsie Lilienthal, in fee simple absolute, free and clear of any encumbrances and that the Last Will of Elsie Lilienthal dated December 13, 1973, is hereby considered to be properly revoked and terminated as a Joint Will and that Albert Lilienthal is free to dispose of his property, inter vivos or by will, without restriction of any kind.

Notice of hearing on this addendum to the final report in Elsie's estate was given to Albert, Florence Banks and her conservator, Brenton National Bank of Des Moines.

■ Shirley claims the heirs are now bound by that order. We disagree. It is a well-established rule of law in this state that, where the court has jurisdiction both of the person and the subject matter, a judgment is conclusive against collateral attack, though it be erroneous. *See Morris Plan Co. of Iowa v. Bruner,* 458 N.W.2d 853, 855–56 (Iowa App.1990); *Heishman v. Heishman,* 367 N.W.2d 308, 309 (Iowa App. 1985); *Reimers v. McElree,* 238 Iowa 791, 796–97, 28 N.W.2d 569, 572 (1947) (citing *Allen v. First Nat'l Bank,* 191 Iowa 492, 495, 180 N.W. 675, 676 (1920)). But in this instance, the 1988 ruling comes out of the estate of Elsie, after full administration of her estate under the 1973 will. The order purports to decide another matter unrelated to the administration of Elsie's estate from an addendum to the final report. Vacating that order is not an attempt to collaterally attack the order. Rather, we vacate the order as the probate court never had subject matter jurisdiction over the issue nor personal jurisdiction over the third-party beneficiaries under the joint and mutual will affected by the order.

■ Moreover, the later ruling in 1994 left the door open to the heirs to bring an action to enforce their rights under the 1973 joint and mutual will. The 1994 order included this language that the heirs:

> ... still have their contractual rights under the mutual will of Albert and Elsie, since they did not receive notice of the final hearing, and thus the court order in Elsie's estate has no preclusive effect upon them to prevent their insistence upon their contractual rights as third-party beneficiaries of the mutual will.

■ With no appeal of the 1994 ruling, it is the law of this case on this issue under the doctrine of res judicata. This doctrine provides:

> [A] final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, consti-

tutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.

*Iowa Coal Mining Co. v. Monroe County,* 555 N.W.2d 418, 440 (Iowa 1996) (citing Black's Law Dictionary 1305 (6th ed. 1990)).

Accordingly, the district court—pursuant to a special jury verdict—properly set aside the transfers of the Brick house, the Leach contract, the Mausnest farm, and the Brix farm, as these transfers were violative of the 1973 will.

**II. Trede farm.** During the marriage of Albert and Shirley, Albert conveyed his interest, if any, in property called the Trede farm to William Emeis and Sandra Emeis. Shirley claims William and Sandra fraudulently induced Albert to convey his interest to them, without Albert's knowledge of his one-sixth ownership interest. Shirley argues the trial court erred in failing to rule on what ownership interest Albert had in the farm prior to submitting the case to the jury. The court instructed the jury regarding Shirley's claim for fraudulent non-disclosure, but the jury found none. The verdict was supported by substantial evidence and is thus binding. *Wiley v. United Fire & Casualty Co.,* 220 N.W.2d 635, 635 (Iowa 1974). As the jury did not find fraudulent non-disclosure, the question of any ownership interest is therefore moot. We find the district court did not err in failing to find Albert's specific interest in the farm first.

**III. Dismissal of cross-defendant.** J. David McFerren, attorney for Elsie and Albert Lilienthal, drafted the joint will executed on December 13, 1973. On or about July 22, 1982, McFerren, as attorney for Albert, drafted a new will for Albert, executed on that date. Shirley claims McFerren must have had a duty either to Elsie Lilienthal to see that she was protected after the revocation of the joint will or a duty to Albert Lilienthal to see that the joint will was properly revoked. We will not address that argument as Shirley has no standing to raise the claim. She was not an heir to Elsie's estate, and cannot now claim McFerren owed her a fiduciary duty which was breached. Accordingly, we find no grounds upon which relief can be granted to Shirley; we affirm the district court's dismissal of Shirley's cross-petition against McFerren.

Having considered the all other issues on appeal and finding them to be without merit, we affirm the district court.

**AFFIRMED.**