**Daniel FIGLEY, Plaintiff–
Appellant/Cross–
Appellee,**

v.

**W.S. INDUSTRIAL, Defendant–
Appellee/Cross–Appellant.**

No. 10–1271.

Court of Appeals of Iowa.

May 25, 2011.

Dorothy A. O'Brien of Brooke & O'Brien, Davenport, for appellant.

Thomas R. Current, Clinton, and Jeffrey Craig Miller and Duncan Alexander Young, Omaha, Nebraska, for appellee.

Heard by EISENHAUER, P.J., and POTTERFIELD and TABOR, JJ.

TABOR, J.

In this case, we must determine whether a company's counterclaim against its former employee. qualifies as an adverse action for purposes of stating a claim for retaliatory litigation under the Federal Fair Labor Standards Act (FLSA) and the Iowa Wage Payment Collection Act (IWPCA). Because the employee failed to show that the company's counterclaim against him was baseless, the counterclaim did not amount to an adverse action for purposes of stating a retaliation claim and the district court correctly granted a directed verdict in favor of the company on that issue.

Although the employee appeals the denial of his motion for summary judgment, we decline to address that argument because his appeal follows a full trial on the merits of those issues. We also decline to reach the question regarding the correct method of computing his overtime because it is moot.

## I.  Background Facts and Proceedings

Defendant W.S. Industrial Services, Inc. (WSI), an industrial cleaning business, employed plaintiff Daniel Figley from July 2006 through April 15, 2008. Figley initially worked for the company as a mechanic and later as an "operator/laborer in the field on various company projects." In these positions, he was paid by the hour. In August 2007, WSI promoted Figley to a "foreman apprentice," a managerial training position. His compensation structure changed: "foreman apprentice" was a salaried position and he earned approximately $43,000 per year. WSI terminated Figley's employment in April 2008 after Figley and other WSI employees used a company van to go "bar-hopping" and another employee crashed the vehicle into four parked cars and a utility pole.

On September 17, 2008, Figley filed a petition at law claiming WSI violated both the FLSA and the IWPCA. His amended complaint ultimately alleged three counts: (1) he was entitled to unpaid overtime compensation; (2) he was entitled to payment of a discretionary bonus available to WSI management employees; and (3) WSI unlawfully retaliated against him in violation of the FLSA and IWPCA by filing a counterclaim.

WSI defended, arguing Figley was not entitled to overtime pay because he qualified for the executive exemption under the FLSA based on his management and supervisory duties as a foreman apprentice. It argued that because Figley was a foreman apprentice, he was rightly paid on a salaried basis and his overtime eligibility ceased. WSI argued in the alternative, that the Fluctuating Work Week rule pro-

vided the appropriate method of computing his overtime wages.

WSI also filed a counterclaim against Figley, asserting breach-of-contract and negligence theories, seeking recovery for approximately $45,000 in damages the company sustained due to the motor-vehicle accident that occurred while Figley and other WSI employees were out in a company van. The counterclaim alleged (1) Figley breached his at-will employment contract by violating WSI policies and failing to protect company property; or (2) breached his duty of care and was negligent by violating WSI policies and failing to protect company property.

With respect to the van accident, Figley testified that he was assigned to the night crew for a particular job and after his crew had "set up for the job" at the plant, members from both the night crew and the day crew decided to go out for the evening. He testified that Paul Schreiber was the designated driver; the group "went from one establishment to another" and drank for several hours. He further stated that eventually, Alberto Velasco, another WSI employee who was out with them that evening, became upset with Schreiber, who had just parked the van. Figley stated that "everybody was out of the van" when Velasco, who was intoxicated, "went around to the driver's seat, grabbed Paul Schreiber, removed him from the driver's seat, got in the driver's seat, and put it in reverse . . . and [Velasco] drove backwards down the street and struck four cars and a light pole." Figley further testified that he was designated as an "operator" rather than as a "foreman" on that assignment. Figley also stated that WSI's counterclaim for damages resulting from the accident caused him "nonstop worry," "restless

nights," a "three-day migraine," and attorney fees.

After WSI filed the counterclaim, Figley amended his complaint to allege his former employer filed the counterclaim in retaliation for his original complaint to recover overtime wages.

Before trial, Figley moved for summary judgment arguing that no genuine issue of material fact existed with respect to the following three claims and urging the court to decide, as a matter of law, that (1) Figley was a non-exempt employee and was entitled to overtime payment; (2) the Fluctuating Work Week method of calculating overtime payment did not apply because WSI did not establish the elements required before applying that calculation; and (3) with respect to WSI's counterclaim, Figley was not legally responsible for the damages resulting from the accident.[1]

On May 26, 2010, the district court denied summary judgment on the first claim, concluding material issues of fact existed regarding Figley's duties and whether he was an exempt employee. The court declined to address the applicability of the Fluctuating Work Week method for calculating overtime pay, and further concluded Figley violated company policy and material issues of fact existed regarding Figley's potential liability under WSI's counterclaim.

A jury heard the case from June 28 to July 2, 2010. At the close of all evidence, WSI moved for a directed verdict on each of Figley's claims. WSI asked the court to dismiss Figley's claims for overtime compensation, the discretionary bonus, and retaliation. WSI argued that Figley failed to satisfy his burden of proof with respect

---

1. Specifically, he argued that he "had no duty to prevent an accident," "did not breach any duty that he may have had," was not the proximate cause of the accident, and "the risk of property damage cannot be linked to his decision to be out with co-employees."

to all claims and that the company's counterclaim was permissible under Iowa Rules of Civil Procedure. Figley resisted and moved for a directed verdict on WSI's counterclaim. He asserted the district court should dismiss WSI's counterclaim "because of the complete lack of proximate cause . . . on the tort claim and on the contract claim because there is no demonstration that a contract actually did exist."

The district court declined to direct a verdict in favor of WSI on Figley's claim for unpaid overtime compensation, explaining that "there is substantial evidence creating a question of fact for the jury to decide whether or not the Plaintiff is entitled to overtime compensation and the amount of that compensation and how that compensation should be computed." The court granted WSI's motion for a directed verdict with respect to the discretionary-bonus claim and dismissed that issue. The district court also granted WSI's motion for a directed verdict on Figley's retaliation claim, noting that "there [was] no showing of any adverse employment consequence to the Plaintiff as a result of the filing of the counterclaim," and that Figley had "shown no damages that [were] a proximate result of the filing of the counterclaim." The court also stated that "[d]enying the Defendant the opportunity to present its counterclaim in this instance would be denying Defendant the access to the court system to present that claim" and worried that if WSI "filed the counterclaim as a cause of action after the conclusion of this litigation . . . it would be subject to . . . claim preclusion and, perhaps, res judicata on issues that arose in this litigation."

The court denied Figley's motion to dismiss WSI's counterclaim, concluding suffi-

cient evidence of proximate cause existed. At that point, Figley requested that the court reconsider its ruling on the retaliation claim. The district court declined to do so.

The issues of overtime-compensation and Figley's liability for damages sustained in the van accident were submitted to the jury. On July 2, 2010, the jury returned a verdict in favor of WSI on the overtime-pay claim, concluding that WSI failed to pay Figley "overtime pay for hours he worked over 40 per week," but that Figley was an exempt employee who was not entitled to overtime payment. The jury found in favor of Figley on WSI's counterclaim, concluding Figley was not liable for the damages that resulted from the car accident involving the company van. The verdict form indicated that WSI failed to prove that Figley breached an employment contract and also failed to prove that Figley was "negligent in failing to exercise reasonable care while in the custody and control of company property."

Figley appeals.[2]

## II. Analysis

### A. The District Court's Denial of Figley's Motion for Summary Judgment Regarding his Non–Exempt Status and Entitlement to Overtime Wages

Figley appeals the district court's denial of his motion for summary judgment on his unpaid overtime-compensation claim. He asserts the district court should have granted him summary judgment and concluded he was a non-exempt employee entitled to overtime payment for nineteen weeks when he worked as a machine operator, laborer, or mechanic. Figley asks us

---

**2.** Although WSI is a "cross-appellant" in this action, it does not raise any assignments of error on appeal; rather, the company limits

its arguments to refuting Figley's appellate claims.

to conclude as a matter of law that he was entitled to overtime wages. He asserts that he preserved error on this issue by moving for summary judgment, and that if moving for summary judgment did not preserve error, "the rule should be changed."

WSI resists, asserting the district court's denial of Figley's motion for summary judgment is not appealable after a full trial on the merits. The company also argues that Figley failed to preserve error on the issue of whether the court properly submitted his overtime-pay claim to the jury because he failed to move for a directed verdict on that claim at the close of evidence.[3] WSI further contends that Figley did not urge his present argument—that the court should analyze his employment "in separable 'calendar snapshots'" rather than as a "monolith" when determining "whether he was an exempt employee"—to the district court and that he, therefore, failed to preserve the issue for appellate review. The company contends, lastly, that "even if Figley had properly preserved error on this issue, there is more than ample evidence to uphold the jury's finding and verdict that Figley was an exempt employee."

■ A district court's denial of a party's motion for summary judgment is no longer appealable or reviewable once the matter has proceeded to a trial on the merits. *In re Marriage Johnson*, 781 N.W.2d 553, 555 (Iowa 2010) ("We have said on numerous occasions that the district court's denial of a motion for summary judgment is not appealable if the case proceeded to a trial on the merits."); *Lindsay v. Cottingham & Butler Ins. Servs., Inc.*, 763 N.W.2d 568, 572 (Iowa 2009); *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004). After a trial on the merits, a court's decision to deny a motion for summary judgment merges with the trial. *Johnson*, 781 N.W.2d at 555–56; *Lindsay*, 763 N.W.2d at 572; *Kiesau*, 686 N.W.2d at 174. Accordingly, an appellate court "cannot consider the assignments of error relating to the denial of the motion for summary judgment" once the issue has been tried. *Lindsay*, 763 N.W.2d at 572.

■ In the case we decide today, the issues concerning Figley's status as an exempt employee and his entitlement to overtime wages proceeded to a full trial on the merits after the court declined summary judgment; those issues were ultimately submitted to and decided by the jury. Because the parties tried the merits of those issues, the district court's decision to deny Figley's motion for summary judgment is no longer appealable or reviewable. Consequently, we "cannot consider the assignments of error relating to the denial of the motion for summary judgment," and we decline to review the district court's decision denying Figley's motion.[4] *See Johnson*, 781 N.W.2d at 555–56;

3. The company argues, specifically, that "[b]ecause Figley failed to raise the issue of his overtime pay claim in his motion for directed verdict, any supposed error regarding the submission of that issue to the jury was waived and not preserved for appeal."

4. We note that Figley limits his argument to the district court's denial of summary judgment. To the extent his argument could be construed to include an assertion that the court erred in ultimately submitting the over-time-compensation issue to the jury rather than deciding it as a matter of law, Figley waived that claim because he did not include that assertion in his motion for a directed verdict. *See Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 529 (Iowa 1999); *see also Bergquist v. Mackay Engines, Inc.*, 538 N.W.2d 655, 658 (Iowa App.1995) ("[T]he question of whether an issue should have been submitted to the jury is preserved by a motion for directed verdict.").

*Lindsay,* 763 N.W.2d at 572; *Kiesau,* 686 N.W.2d at 174.

■ Further, we do not entertain Figley's argument that if moving for summary judgment did not preserve error, "the rule should be changed," in part because he raises this claim for the first time in his reply brief. *See Young v. Gregg,* 480 N.W.2d 75, 78 (Iowa 1992) ("[W]e have long held that an issue cannot be asserted for the first time in a reply brief."). But, more critically, we are not at liberty to overturn precedent of our supreme court. *State v. Hastings,* 466 N.W.2d 697, 700 (Iowa Ct.App.1990).

### B. Submitting the Issue of Computing Unpaid Overtime Wages Pursuant to the Fluctuating Work Week Method to the Jury

Figley also asserts that the district court erred by allowing the jury to determine whether the Fluctuating Work Week method of computing overtime wages was the appropriate method to use when computing Figley's overtime compensation. Figley contends that WSI did not demonstrate that it satisfied the requirements that a company must meet in order to calculate overtime wages under the Fluctuating Work Week method. Figley asks us to conclude as a matter of law that WSI was not entitled to determine Figley's overtime wages pursuant to the Fluctuating Work Week method.

WSI argues that the method of calculating overtime pay is "moot and unnecessary for appellate review because the jury determined that Figley was an exempt employee," and therefore was not entitled to overtime wages.

■ An appeal " 'is moot if it no longer presents a justiciable controversy because [the contested issue] has become academic or nonexistent.' " *In re D.C.V.,* 569 N.W.2d 489, 494 (Iowa 1997) (citation omitted). Our test of mootness is "whether a judgment, if rendered, would have any practical legal effect upon the existing controversy." *Junkins v. Branstad,* 421 N.W.2d 130, 133 (Iowa 1988). As a general rule, we will dismiss an appeal " 'when judgment, if rendered, will have no practical legal effect upon the existing controversy.' " *In re M.T.,* 625 N.W.2d 702, 704 (Iowa 2001) (citation omitted). "[S]ubsequent events may make an issue involving a court's prior decision moot." *Grefe & Sidney v. Watters,* 525 N.W.2d 821, 827 (Iowa 1994).

■ We conclude the jury's verdict in this case—which found that Figley was not entitled to overtime compensation—rendered moot the issue of whether the court erred in allowing the jury to determine if the Fluctuating Work Week method of computing Figley's overtime wages was appropriate. *See Everhard v. Thompson,* 202 N.W.2d 58, 61–62 (Iowa 1972) (explaining that on appeal the plaintiff argued the "interrogatories failed to distinguish between the driver's negligence 'being the sole proximate cause of the plaintiff's injury and being a concurring cause' " and concluding the "issue is mooted by [the] jury's determination there was no negligence"); *see also In re Estate of Lilienthal,* 574 N.W.2d 349, 353 (Iowa Ct.App. 1997) (explaining that "Shirley argues the trial court erred in failing to rule on what ownership interest Albert had in the farm prior to submitting the case to the jury" and concluding, "[a]s the jury did not find fraudulent non-disclosure, the question of any ownership interest is therefore moot").

The jury concluded Figley was an exempt employee. Because Figley was not entitled to overtime compensation, our resolution of the proper method of computing his overtime wages would not have any "practical legal effect upon the existing

controversy." *M.T.*, 625 N.W.2d at 704. Consequently, we decline to resolve it.

## C. Directed Verdict on Figley's Retaliatory–Litigation Claim

At the close of evidence, the district court granted WSI's motion for a directed verdict on Figley's retaliation claim. Although the court submitted the issue of whether Figley was liable to WSI for damages that resulted from the car accident, the court declined to submit the issue of whether WSI brought that claim against Figley in retaliation for Figley's suit.

Figley asserts WSI filed its counterclaim for the purpose of retaliating against him for seeking overtime compensation, in violation of both the FLSA (29 USC § 215(a)(3)) and the IWPCA (Iowa Code § 91A.10 (2009)); he alleges the counterclaim caused him compensatory losses, including attorney fees and mental anguish. Figley argues that whether WSI filed a counterclaim in retaliation for Figley's suit should have been decided by the jury and he asks us to remand the case for a new trial on his retaliatory-litigation claim.

Figley maintains an employer's counterclaim against an employee who brings suit for payment of overtime wages qualifies as an impermissible retaliatory or discriminatory act under those statutes.[5] He contends WSI's counterclaim against him was "meritless" because Figley was "not acting as a foreman on the job, was not driving, had not been assigned to the damaged car and could not have foreseen the accident or its consequence." In his reply brief, Figley further argues that WSI's counterclaim was not compulsory because it did not arise from the same transaction or occurrence as that giving rise to his own claim and that "[w]hether it was a compul-

sory counterclaim does not affect Mr. Figley's right to claim it was retaliatory." Lastly, he asserts that substantial evidence supported his retaliation claim.

WSI contends the district court properly granted a directed verdict and dismissed Figley's retaliation claim. The company alleges that its counterclaim was compulsory under Iowa Rule of Civil Procedure 1.241 and that "permitting retaliation claims based on the filing of a counterclaim would prejudice employer defendants, who would have to waive such compulsory claims at the risk of facing a retaliation claim." WSI also contends that Figley's argument "lacked a proper legal basis" and had no evidentiary support, stating the "only evidence cited in his brief is Figley's speculative testimony" about "the effect of the counterclaim on other employees," and Figley's personal " 'nonstop worry,' 'sleepless nights' . . . a 'three-day migraine' and . . . attorney fees."

### 1. Scope & Standard of Review

We review a district court's ruling on a motion for directed verdict for the correction of errors at law. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). When presented with an appeal from the grant of a directed verdict, we look for substantial evidence. *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). "Where no substantial evidence exists to support each element of a plaintiff's claim, the court may sustain a motion for directed verdict." *Id.* If, however, the record reveals that substantial evidence supports each element of the claim, we must overrule the motion. *Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002). " 'Evidence is substantial when a

---

**5.** He asserts that "other courts have recognized litigation as a tool for retaliation and a    basis for recovery."

**610**

reasonable mind would accept it as adequate to reach a conclusion.'" *Godar*, 588 N.W.2d at 705 (citation omitted).

■ In reviewing the district court's decision, we view the evidence in the light most favorable to the party against whom the motion was directed. *Id.* "If reasonable minds could reach different conclusions based upon the evidence presented, the issue must be submitted to the jury for determination." *Heinz*, 653 N.W.2d at 338.

**2. Merits**

The FLSA provides as follows:

[I]t shall be unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter....

29 USC § 215(a)(3).

Similarly, the Iowa statute provides:

An employer shall not discharge or in any other manner discriminate against any employee because the employee has filed a complaint ... or brought an action under this section ... against an employer.

Iowa Code § 91A.10(5).

■ Both parties agreed at oral argument that Figley must establish three elements for a prima facie case of retaliation: (1) he engaged in a protected activity; (2) suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *See Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir.2006); *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034–35 (8th Cir.2005) (discussing retaliatory-discharge claim under the FLSA); *Mallon v. U.S. Physical Therapy, Ltd.*, 395 F.Supp.2d 810, 821 (D.Minn.2005) (discussing retaliation claims relating to poor-performance reviews and taking away one week of an employee's vacation time under the FLSA). Because the language in Iowa Code section 91A.10(5) tracks the language in its federal counterpart so closely, we apply the same three-part analytical framework used by courts when interpreting the FLSA as we analyze Figley's state claim here. *See Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989) (analyzing a claim that an employer discriminated against an employee in violation of the Iowa Civil Rights Act and explaining that "[o]ur court has ruled that civil rights cases brought under chapter 601A will be 'guided by federal law' and 'federal cases'"). We note, moreover, that neither party argued we should apply a different analysis under the IWPCA.

■ Figley established the first element—that he engaged in a protected activity. According to the plain language of both the FLSA and IWPCA, Figley's initiation of a lawsuit to recover disputed overtime compensation is a protected activity. The FLSA specifically protects an employee's right to file a complaint or institute a legal proceeding by stating, "it shall be unlawful ... to ... discriminate against any employee because such employee has filed any complaint or instituted ... any proceeding under or related to this chapter." 29 USC § 215(a)(3). The IWPCA similarly provides, "[a]n employer shall not ... discriminate against any employee because the employee has filed a complaint ... or brought an action under this section." Iowa Code § 91A.10(5).

The resolution of this issue turns on the second element. We must determine whether the company's counterclaim against Figley qualifies as an "adverse action" for purposes of stating a claim for retaliation. Both parties agree that non-work related actions can qualify as an

adverse action for purposes of stating a retaliation claim. In the context of employees asserting that their employer's litigation tactics amount to adverse actions, WSI maintains that employees must demonstrate that the employer's disputed litigation tactics were "baseless" in order to satisfy the second element. *See Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731, 743–44, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277, 289 (1983); *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1407 (10th Cir.1992). WSI further argues that to demonstrate the disputed litigation tactic (here, the company's counterclaim) was baseless, the employee must show that the company's counterclaim was not supported by law or fact. That is, if a legal and factual basis exists to support WSI's counterclaim, then Figley cannot establish the second element.

We agree with WSI: for Figley to satisfy the second element of his prima facie retaliation claim—demonstrating WSI's counterclaim was an adverse action—he must show that WSI's counterclaim against him was baseless—that is, he must show it was not supported by law or fact. *See Bill Johnson's Rests., Inc.,* 461 U.S. at 732, 743–45, 748–49, 103 S.Ct. at 2170, 2172, 2173, 76 L.Ed.2d at 290–93 (construing the National Labor Relations Act and concluding "it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of [protected] rights," that a baseless lawsuit is one that "lacks a reasonable basis in fact or law," and that "the filing of a meritorious law suit, even for a retaliatory motive, is not an unfair labor practice"); *Martin,* 977 F.2d at 1407 (applying the Bill Johnson's test— that litigation must be baseless to be retaliatory—in the context of the FLSA and explaining "[a] suit is baseless if 'controlling federal law bars the plaintiff's right to relief, ... clear state law makes the case

frivolous, or ... no reasonable jury could [find] in favor of the plaintiff' " (citation omitted)); *Ergo v. Int'l Merch. Servs., Inc.,* 519 F.Supp.2d 765, 781 (N.D.Ill.2007) ("[T]he only circumstance in which the filing of a compulsory counterclaim might constitute retaliation is where the counterclaim is totally baseless.").

█ We conclude that WSI's counterclaim against Figley was not baseless because it did not lack a reasonable basis in law or fact. To the contrary, a legal basis existed for WSI's counterclaim because an employer may bring a claim against an employee for damage to the employer's property caused by the employee's negligence. *See Sprague v. Boston & Maine Corp.,* 769 F.2d 26, 28–29 (1st Cir.1985) (discussing "an employer's common law right to sue its employees for property damage"); *Cavanaugh v. W. Md. Ry. Co.,* 729 F.2d 289, 290–91 (4th Cir.1984) ("[W]e begin by recognizing that there is a well accepted common law principle that a master or employer has a right of action against [an] employee for property damages suffered by [the employer]."); *see also* Restatement (Second) of Agency § 402(1)(a), at 241 (1958).

In addition, a factual basis existed to support WSI's counterclaim as well. The company explained the factual basis in its appellate brief as follows:

The counterclaim alleges that the accident was the result of Figley failing to perform his supervisory/management duties. Although Figley was not the driver, as the only supervisory/management employee, he had the responsibility to care for the company van and to make sure company policy was followed. Thus, even if one assumes that the factual basis for the counterclaim was "weak," the factual basis was clearly present.

The record reflects that Figley testified that he was the only apprentice foreman in the group that went "barhopping" that night. Troy Holm, the WSI president, testified that foremen are responsible for the company equipment as well as the care and custody of their crew. Tim Bice, an officer for the company, testified that using the company van to go "barhopping" was a violation of company policy and that the company addressed this policy during safety meetings with employees. Nevertheless, Figley and other employees went "barhopping" in the company van and it is undisputed that the van later crashed into several vehicles and a utility pole causing the company damage. We conclude that this creates a factual basis for WSI's counterclaim against Figley. *See Ergo*, 519 F.Supp.2d at 781 ("Here, Defendants have at least pointed to testimony (albeit self-serving), the employee handbook, and a plausible claim that Defendants were ignorant of any overpayments to Plaintiffs until discovery in this suit. It is not much, but the Court finds that it overcomes the 'baselessness' threshold.").

Because a legal and factual basis exists to support WSI's counterclaim against Figley, the counterclaim is not an adverse action and Figley has failed to satisfy his burden of showing a prima facie case of retaliation. Consequently, we affirm the district court's grant of directed verdict on this issue. Further, because this conclusion is dispositive, we decline to determine whether the counterclaim was compulsory under our rules of civil procedure.

**AFFIRMED.**

